UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



CARLOS ABREU,

            Plaintiff,

v.

KEVIN J. BROWN, ET AL.,

            Defendants.

**ORDER**

6:14-CV-06599 EAW

## INTRODUCTION

Plaintiff Carlos Abreu ("Plaintiff"), *pro se* and incarcerated, filed the instant action and 15-CV-6155 CJS, which were consolidated. Plaintiff was directed to file a single Amended Complaint addressing all claims from both actions. (Dkt. 21). Plaintiff has done so, and the Amended Complaint (Dkt. 50) is now reviewed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Plaintiff's Amended Complaint comprises 81 pages, more than 150 paragraphs, more than 150 Defendants, and it alleges numerous violations of his constitutional rights. For the reasons discussed below, some of Plaintiff's claims must be dismissed pursuant to §§ 1915(e)(2)(B) and 1915A for failure to state a claim on which relief may be granted, some claims will proceed to service, while other claims must be severed and transferred to the Northern and Southern Districts of New York pursuant to 28 U.S.C. § 1406(a).

- 1 -

## DISCUSSION

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court must conduct an initial screening of this Amended Complaint. The Court must dismiss the Amended Complaint if it is "frivolous and malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In evaluating the Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases and stating that, "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases").

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to

- 2 -

a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

Based on its evaluation of the Amended Complaint, the Court finds that some of Plaintiff's claims must be dismissed pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b) because they fail to state a claim on which relief may be granted, others may proceed to service, while other claims must be severed and transferred to the Northern and Southern Districts of New York pursuant to 28 U.S.C. § 1406(a).

## I.      Procedural History and Pleading Requirements

Plaintiff originally filed two Complaints, consisting of some 266 handwritten pages, 1,170 numbered paragraphs, and 131 named and unnamed Defendants. (Dkt. 21 at 6). The Court directed Plaintiff to file a single amended complaint and specifically reminded him, in preparing his Amended Complaint, of the need to establish the personal liability of individuals named as Defendants. The Court also warned Plaintiff that he should not name Defendants in his Amended Complaint "if he cannot allege that they were personally involved in causing a constitutional violation." (*Id.* at 7-8).

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a pleading which states a claim for relief "must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 8 further provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). As the Second Circuit has observed:

> The statement should be plain because the principal function of the pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citations omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

While a claim for relief must be short and plain, it must also contain allegations that, if true, would establish the personal liability of the named defendant for the constitutional violation(s) attributed to that defendant. A plaintiff's conclusory allegation of a constitutional violation, without more, fails to state a claim on which relief may be granted. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."); *see also Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). Despite the express direction that Plaintiff set forth the personal liability of each person named as a Defendant, much of the Amended Complaint consists of lists of individuals who are alleged in conclusory fashion to have committed constitutional violations.

- 4 -

## II.    Plaintiff's Allegations at Wende C.F.

In his preliminary statement, Plaintiff states that he intends to make the following allegations: Eighth Amendment violations involving deliberate indifference to serious medical needs; "physical and psychological abuse"; discrimination "based on his mental illness, race and ethnicity"; violations of his First Amendment right to "religious means" and access to courts; sexual abuse; conspiracy; and retaliation. (Dkt. 50 at 6). These occurred at three Department of Correction and Community Supervision facilities: Wende Correctional Facility ("Wende C.F."), the prison where Plaintiff was held when the events alleged in the original Complaint took place, as well as Sullivan Correctional Facility ("Sullivan C.F.") and Great Meadow Correctional Facility ("Great Meadow C.F."), prisons to which Plaintiff was transferred after filing his initial Complaint. (*Id.*).

### A.    Medical Claims (Dkt. 50 at ¶¶ 9-22)

Plaintiff states that he was transferred to Wende C.F. on July 15, 2014. (Dkt. 50 at 7). He had previously been diagnosed with tuberculosis and prescribed medication to treat the disease. The course of medication was to be between nine months and one year, although the date that the treatment started is not provided. Upon arrival at Wende C.F., Dr. Levitt ordered tuberculosis testing to be conducted, and when the disease was confirmed, re-prescribed the medication. As a result, Defendant for "several days denied Abreu his T.B. medications." (*Id.* at ¶ 13).

Plaintiff also alleges that:

Defendants Dr. Levitt she is the Facility Health Service Director at Wende CF and she alleged and told me that she was directed and ordered by the Deputy Superintendent for Administration Ms. Schumacher, the Deputy

Superintendent for Health Services Ms. Killinger, the Superintendent
Lempke, and Dr. Koenigsmann, don't give Abreu nothing, or limited medical
health care because Abreu has two (2) pendant lawsuits in the Western
District Court.

(*Id.* at ¶ 15).

To make out a § 1983 retaliation claim, an inmate must show the following: (1) he
was engaged in constitutionally protected conduct; and (2) the prison officials conduct was
taken in retaliation for the inmate's protected conduct. *Graham v. Henderson*, 89 F.3d 75,
80 (2d Cir. 1996). "[I]ntentional obstruction of a prisoner's right to seek redress of
grievances 'is precisely the sort of oppression that . . . section 1983 [is] intended to
remedy.'" *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (alterations in original)
(quoting *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987)). "The right to petition
government for redress of grievances—in both judicial and administrative forums—is
'"among the most precious of the liberties safeguarded by the Bill of Rights."'" *Graham*,
89 F.3d at 80 (citations omitted). Although prisoner's claims of retaliation are examined
with "skepticism and particular care," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995),
an explicit statement that adverse medical actions were taken in retaliation for pursuing
redress of grievances, presumed true at this stage in the proceedings, is sufficient to proceed
to service. *See, e.g., Parks v. Blanchette*, 144 F. Supp. 3d 282, 331 (D. Conn. 2015)
("Prisoner plaintiffs may rely on circumstantial evidence to prove their retaliation claims,
such as temporal proximity of events, but in doing so, the plaintiff also must usually
provide some non-conclusory evidence that raises an inference of retaliatory animus in
order to proceed to trial." (internal quotation marks omitted)).

Likewise, Plaintiff's allegation that an alleged conspirator explicitly admitted concerted action on the part of the group states a cognizable claim that two or more Defendants have engaged in a conspiracy to deprive the Plaintiff of his constitutional rights, establishing an agreement among the alleged conspirators. *See, e.g.*, *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Salahuddin*, 861 F.2d at 43.

Finally, Plaintiff's allegations raise Eighth Amendment claims regarding the denial of medical care. A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that the defendant was deliberately indifferent to a plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)). Plaintiff alleges that Defendants:

> denied Abreu his medications, denied him regularly sick call services, denied him his T.B. meds, denied him his asthma inhaler his Lipitol and/or Claritin meds, refused to re-prescribe his orthopedic boots, back brace, hand brace, denied Mr. Abreu treatment for his chronic pains in lower back, his left ankle, foot and treatment for his bleeding and pain in his anus rectal/stool.

(Dkt. 50 at ¶ 14). Coupled with Plaintiff's allegations regarding Dr. Levitt's statements, Plaintiff has sufficiently pled claims of retaliation, conspiracy, and denial of medical care

against Defendants Levitt, Schumacher, Killinger, Lempke, Koenigsmann to permit them to proceed to service at this time.[1]

Plaintiff also alleges that Doctors Bozer, Bukowski, Stubeusz, and Nurses Leuthe, Fucina, Toporek, Obertean, Vollmer, LaPenna, Davis, and Neal denied him medical care. (*Id.*). However, despite the previously discussed warning directing Plaintiff's attention to the necessity of establishing personal involvement of each Defendant named in the Amended Complaint, these allegations are conclusory in nature. Conclusory allegations fail to state a claim on which relief may be granted. *Barr*, 810 F.2d at 363 ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."). In the case of an individual defendant, Plaintiff must show that the Defendant was personally involved in a constitutional deprivation, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), or that the Defendant, employed in a position of control, failed to remedy the alleged wrong after learning of it, or created a policy or custom under which unconstitutional practices occurred, or was grossly negligent in managing subordinates, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Colon*, 58 F.3d at 874. Plaintiff's factual allegations against these Defendants are merely that "they refused intentionally and in bad faith denied me medical care," followed by a list of medical care. (Dkt. 50 at ¶ 14). Plaintiff's allegations

---

[1]    In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

fail to set forth the nature of the involvement of the Defendants. The claims set forth in ¶ 14, against all Defendants except Dr. Levitt, are therefore dismissed with prejudice as Plaintiff has already been granted an opportunity to amend his Complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Seuerwald v. Cleveland*, 651 F. App'x 49 (2d Cir. 2016).

Likewise, in a wholly conclusory fashion, Plaintiff sets forth claims that Defendant Killinger made "similar" admissions that "all this" (presumably referring to the conspiracy to deny him medical care) came from senior officials, whom Plaintiff lists. A conclusory allegation that a "similar" comment was made is insufficient to establish the personal involvement of the persons so accused, or the existence of a conspiracy to deny Plaintiff medical care. *See, e.g.*, *Leon v. Murphy*, 988 F2d 303, 310 (2d Cir. 1993) (affirming summary judgment dismissing conspiracy claim based only on conclusory allegations). Plaintiff's claims forth in ¶ 17 are also dismissed with prejudice for failure to state a claim on which relief may be granted. *See Cuoco*, 222 F.3d at 112.

Plaintiff makes additional claims in ¶ 19 against Defendant Wyzykowski, asserting that Wyzykowski (and Dr. Levitt) denied him prescription glasses with tinted lenses, and that those glasses were "lost by prison officers in the SHU." (Dkt. 50 at 10). Plaintiff's allegations that some other official lost his glasses, and that Defendant Wyzykowski denied him glasses in some unspecified manner, again state a conclusion, and do not show that Defendant Wyzykowski's actions demonstrate deliberate indifference to Plaintiff's serious medical need. As to Defendant Levitt, these allegations relate to the claims going forward

as directed above. As to Defendant Wyzykowski, Plaintiff's claims forth in ¶ 19 are dismissed with prejudice for failure to state a claim on which relief may be granted.

Plaintiff next alleges that Defendants Fink and Godfrey denied him physical therapy and occupational therapy relating to hand surgery in March 2014. (*Id.* at ¶ 20). He states that he was also diagnosed with carpal tunnel syndrome, and that the surgeon "has recommended and/or ordered pain medications, physical therapy and a hand brace." (*Id.*). The Supreme Court has cautioned that a prisoner's

> complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 106. Rather, a plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. Plaintiff's claim that Defendants Fink and Godfrey failed to follow the vaguely described course of treatment which the surgeon "recommended and/or ordered" falls well short of this standard, especially in light of Plaintiff's claims, which are proceeding to service, against medical supervisors for failing to direct treatment of Plaintiff. Plaintiff's claims forth in ¶ 20 against Defendants Fink and Godfrey are dismissed with prejudice for failure to state a claim on which relief may be granted. *Cuoco*, 222 F.3d at 112.

Plaintiff next alleges that Defendants Rivera, Haggerty, Lisson, and Stirk denied him mental health treatment and medications. He further alleges that they filed multiple "false tickets" in retaliation for multiple "grievances and complaints against [them] and

DOCCS and OMH staff and officers." (Dkt. 50 at ¶ 21). He alleges that this conduct "continued from July/2014 to/through of March – April/2015." (*Id.*). He further alleges that Defendants Rivera and Haggerty had also written "several reports in the year 2012," and that they did "the same or similar in the SHU at Wende" in July 2014. (*Id.* at ¶ 22). Plaintiff has again merely stated a series of conclusions in general terms, and has failed to set forth allegations that would establish the personal involvement of any of these Defendants in a constitutional violation. Plaintiff's claims set forth in ¶¶ 21 and 22 against Defendants Rivera, Haggerty, Lisson, and Stirk are dismissed with prejudice for failure to state a claim on which relief may be granted.

### B.    Claims of Sexual Abuse and Retaliation (Dkt. 50 at ¶¶ 23-42)

Plaintiff states that Defendants Hamilton, Mayer, Skubis, and Powell "were sexually harassed with improper and sexual misconducts and behaviors in different incidents [which happened] between the SHU and the MHU at Wende C.F. in the year 2014 (July 2014) to/through March 2015." (*Id.* at ¶ 23). For the reasons discussed in Section II.A above, these wholly conclusory claims set forth in the Complaint in ¶ 23 are dismissed with prejudice for failure to state a claim on which relief may be granted.

Plaintiff makes further general allegations in ¶ 24. Plaintiff then accuses Defendant Hamilton of making crude sexual remarks to him from January 2015 through March 2015 and intentionally touching Plaintiff's buttocks during pat frisks. In part, Plaintiff is alleging that his Eighth Amendment right to be free of cruel and unusual punishment has been violated by this verbal abuse. However, "harassment or profanity alone, unaccompanied by any [physical] injury, no matter how inappropriate, unprofessional, or reprehensible it

- 11 -

might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (citation and internal quotation marks omitted); *see also Patton v. Przybylski*, 822 F.2d 697 (7th Cir. 1987) (determining that derogatory remarks do not constitute a constitutional violation); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming the dismissal of a claim that a prison guard called plaintiff names). Plaintiff makes no allegation of any physical injury whatsoever arising out of the incidents described in this part of the Complaint, and, therefore, this paragraph does not allege a violation of his right to be free from cruel and unusual punishment.

Further, with regard to the intentional touching of Plaintiff's buttocks alleged in ¶ 25, Plaintiff has not sufficiently alleged an Eighth Amendment violation. To succeed on an Eighth Amendment claim, a plaintiff "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 254, 257 (2d Cir. 2015). "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257-58. Here, Plaintiff alleges only that a pat frisk took place

and that the touching of his buttocks was intentional, not that it served no penological purpose. Therefore, his claim of sexual harassment fails to state a claim on which relief may be granted and must be dismissed with prejudice. *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 508 (S.D.N.Y. 2012) (dismissing complaint because "Plaintiff's vague and conclusory submission provides no further description of this alleged [sexual] misconduct, nor the context in which it, purportedly, occurred").

However, Plaintiff alleges that, in response to his complaints regarding the above, an investigator with the Inspector General interviewed him regarding the matter on March 4, 2015. (Dkt. 50 at ¶¶ 26-27). About 20 to 30 minutes after this interview, Plaintiff alleges that Defendant Hamilton made "signs of threats" and then walked behind Plaintiff's cell. Defendant Hamilton made threatening remarks to Plaintiff, after which Plaintiff heard loud noises from the area to which Defendant Hamilton had walked. Water sprayed from the faucet in Plaintiff's cell striking Plaintiff and the cell generally, including Plaintiff's legal papers. After it stopped, Defendant Hamilton walked in front of Plaintiff's cell and said "yes, bitch, taken it." (*Id*. at ¶ 30). After that, Plaintiff alleges that "extremely hot" water sprayed from the faucet, striking and burning Plaintiff. (*Id*.). When Plaintiff began to cry due to the pain caused by the hot water, he alleges that Defendant Hamilton yelled "yes, bitch, cry like a little bitch," and laughed at Plaintiff. (*Id*. at ¶ 33). Plaintiff's allegations have adequately pled an Eighth Amendment claim of excessive use of force, as well as a claim of retaliation against Defendant Hamilton, which may proceed to service.

Further, Plaintiff alleges that 15 to 30 minutes after the incident with the water, Defendants Hamilton and Szablick delivered breakfast to his cell, but the tray contained

- 13 -

only cups full of wet toilet paper. (*Id.* at ¶ 34). The two Defendants also refused to permit Plaintiff to seek medical treatment and provided him with "no foods in all for two or three days." (*Id.*). Plaintiff's claims of retaliation and denial of medical care may proceed to service against Defendants Hamilton and Szablick.

Plaintiff alleges that the spraying of hot water on him occurred again at the hands of Defendant Rosplock later the same day, between 6:00 P.M. until shift change at 10:30 or 11:00 P.M. (*Id.* at ¶¶ 35-37). Especially given the closeness in time to the earlier allegations, Plaintiff's Eighth Amendment claims of excessive use of force, retaliation and denial of medical treatment against Defendant Rosplock may proceed to service at this early stage.

Plaintiff next alleges that Defendant Geary saw him the following day but provided no treatment. (*Id.* at ¶ 39). However, Plaintiff's allegations are insufficient to show that Defendant Geary was deliberately indifferent to Plaintiff's injuries, which he does not describe. Plaintiff further alleges, in wholly conclusory fashion, that 30 named Defendants knew of the misconduct he has alleged against Defendants Hamilton, Szablick, and Rosplock. (*Id.* at ¶¶ 40-42). Plaintiff alleges that these Defendants also had further knowledge that the water "destroyed Abreu legal materials" and, specifically, that Defendant Stirk told Plaintiff to keep strong and report his conditions. (*Id.* at ¶ 41).

In support of these claims, Plaintiff makes extensive but conclusory allegations of fabrications, threats, and failure to provide medication. (*Id.*). Plaintiff notes that the "Defendants above" were often in the SHU and "make daily rounds," and that, therefore, "this is impossible that they don't see/observed the incidents and [impossible] that they

don't has knowledges about the incidents [sic]." (*Id.* at ¶ 42). Assuming, *arguendo*, that it was clear the following day that water had been sprayed in the cell, Plaintiff's allegations do not establish conditions which any supervisor would immediately recognize as evidence of a constitutional violation committed by a corrections officer as distinguished from, for example, the actions of an angry or disturbed inmate. *See generally Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (internal quotation marks and citation omitted)). Plaintiff's allegations are insufficient to state a claim for the reasons discussed in Section II.A of this Order because they fail to show knowledge of or personal involvement in the alleged constitutional deprivations by the numerous Defendants named. The claims set forth in ¶¶ 39 through 42 are therefore dismissed with prejudice for failure to state a claim on which relief may be granted.

### C. Claims Regarding the Cell Shield and Exposer Control Suit (Dkt. 50 at ¶¶ 43-44)

Plaintiff alleges that Defendants Brown, Lempke, Meyer, Lucas, Meara, Roberts, and Growley directed that a plexiglass cell shield be used in his cell, and that he be directed to wear a special suit designed for those who expose themselves called an "exposer control suit." (*Id.* at ¶ 43). These requirements were reviewed and re-approved every 30 days. (*Id.* at ¶ 44).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement that the conditions must be "sufficiently

serious" from an objective point of view, and the plaintiff must demonstrate that the prison officials acted subjectively with "deliberate indifference." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The Eighth Amendment does not mandate comfortable prisons, but it does not permit inhumane treatment of those in confinement. *Farmer*, 511 U.S. at 832.

Plaintiff states in a conclusory fashion that the plexiglass shield allowed inadequate ventilation in his cell, and that the special exposer control suit prompted sexual harassment by guards and inmates. (Dkt. 50 at ¶ 43). He further alleges that the suit "provoked choking sensations, rash in his body, pains in his neck and throat" because the heavy padlock pulled on the suit. (*Id.*). Plaintiff further alleges a denial of due process, alleging generally that he was not provided with the orders and notices involved in the review process. (*Id.* at ¶ 44).

Assuming, *arguendo*, that Plaintiff's allegations were sufficient to establish an Eighth Amendment violation, the claims would be dismissed because Plaintiff has—despite specific instructions to do so—failed to adequately allege the personal involvement of any individual Defendant in these deprivations, for the same reasons set forth in Section II.A above.

However, Plaintiff's allegations are also insufficient to establish a violation of Plaintiff's Eighth Amendment rights regarding the conditions of his confinement. Plaintiff

alleges that he was compelled to wear an exposer control suit, and that this decision was regularly reviewed and re-approved. The use of exposer control suit does not, without more, establish a constitutional violation because "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Further, Plaintiff's allegations concerning the conditions in his cell due to the cell shield are insufficient to state a claim for which relief may be granted because they do not show a failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836. Finally, Plaintiff's allegations regarding the denial of due process of law are also made in a wholly conclusory fashion. Therefore, the claims set forth in ¶¶ 43 through 44 must be dismissed with prejudice for failure to state a claim on which relief may be granted.

## D. Claims Regarding Due Process, Retaliation, and Access to Court (Dkt. 50 at ¶¶ 45-55)

Plaintiff alleges that Defendants Roman, Roberts, Mendez, Skubis, Stirk, J. Mayer, Rivera, Haggerty, Lisson "and others staff at Wende C.F. were wrote multiply false tickets and reports to Mr. Abreu in retaliations for Abreu grievances [sic]" against them. (Dkt. 50 at ¶ 45). Plaintiff likewise alleges in conclusory fashion that the conduct of the resulting disciplinary hearings denied him due process from July 2014 through March 2015. (*Id.* at ¶¶ 45, 49).

The core of due process is the right to notice and a meaningful opportunity to be heard. *LaChance v. Erickson*, 522 U.S. 262, (1998). This usually entails the following:

(1) advance written notice of the . . . charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses

and present documentary evidence in (their) defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). To establish a due process violation, a plaintiff must set forth allegations that, if true, establish that a defendant has deprived him of one of the guarantees of due process of law. Plaintiff has again set forth only conclusory allegations that Defendants deprived him of due process. Likewise, Plaintiff's allegations of retaliation are also wholly conclusory. For the reasons explained above in Section II.A, Plaintiff's due process and retaliation allegations are insufficient to state a claim on which relief may be granted and must therefore be dismissed with prejudice.

In addition, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Plaintiff has not set forth allegations regarding the penalty imposed; thus, he has also failed to meet the requirements of *Sandin*.

Plaintiff next alleges, in conclusory fashion, that he was denied access to the law library, courts, legal copies, postage, writing paper, envelopes and carbon paper. (Dkt. 50 at ¶ 46). He alleges that he was "forced to abandon several of his actions, lawsuits cases and proceedings cases and lawsuits were dismissed" due to Defendants' actions. (*Id.* at ¶ 47). He claims that property was lost or destroyed in retaliation for his grievances and to cover up misconduct. (*Id.* at ¶ 48). Plaintiff further alleges that Defendant Groden denied

him general library materials and Spanish materials, and that Defendant Furloni denied him Spanish materials and "bilingual dictionaries." (*Id*. at ¶ 50).

To establish a constitutional violation, Plaintiff's allegations must show a denial of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The mere limitation of access to legal materials, without more, does not state a constitutional claim because "the Constitution requires no more than reasonable access to the courts." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (quoting *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."). Further, to establish a *Bounds* violation, the "actual injury" that an inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *See id*. at 352. Plaintiff's conclusory allegations fail to establish a denial of reasonable access to courts, and Plaintiff has set forth no allegations to show that he was pursuing non-frivolous legal claims. Therefore, Plaintiff's claims of denial of access to courts in ¶¶ 46 through 50 are dismissed with prejudice for failure to state a claim on which relief may be granted.

Plaintiff next alleges that Defendant Ferron "was regularly don't processed [sic] Abreu grievances and Abreu appeals to Superintendent and CORC" and refused to make

rounds denying Plaintiff "direct access to the inmate grievance program." (Dkt. 50 at ¶ 51). He further alleges that, since this Defendant allegedly reviewed complaints, she must have known about the allegations made against the other Defendants. (*Id.*). Plaintiff also alleges that Defendant Johnson was assigned to deliver legal mail and that "she regularly was missing Abreu incoming legal mails or not delivered Abreu his legal mails and law library materials," allegedly because a sign on the front of Plaintiff's cell identified him as an "exposer." (*Id.* at ¶ 52). Plaintiff's allegations are again set forth only in conclusory fashion, and. for the reasons explained in Section II.A, fail to state a claim on which relief may be granted.

Plaintiff then alleges that Defendants Krygier and Skubis "denied Abreu his FOIL request for review hearing packets, video tapes, documents, directives and other papers." (*Id.* at ¶ 53). Plaintiff alleges generally that this was in retaliation for prior grievances and complaints against these Defendants and others. Plaintiff's allegations of retaliatory purpose are conclusory and insufficient, even absent the application of particular skepticism. *See Colon*, 58 F.3d at 872. Further, the appropriate vehicle for challenging denials of freedom of information requests is a state court Article 78 proceeding. N.Y. CPLR 7801; *see Schuloff v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997). An Article 78 proceeding, after Plaintiff has exhausted the administrative remedies, provides Plaintiff with an adequate remedy. *Mamerella v. County of Westchester*, 898 F. Supp. 236, 238 n. 4 (S.D.N.Y. 1995); *see also Rodriguez v. Hynes*, Nos. 94–CV–4578, 89–CV–0250, 90–CV– 1304, 93–CV–1068 and 94–CV–0127, 1995 WL 350042 (E.D.N.Y. June 8, 1995). Where, as here, an adequate post-deprivation remedy exists, Plaintiff's due process claim may be

rejected. *Katz v. Klehammer*, 902 F.2d 204 (2d Cir. 1990). Accordingly, Plaintiff's due process claims regarding his FOIL requests are dismissed with prejudice for failure to state a claim on which relief may be granted.

Plaintiff next alleges that Defendants Hill and Crowley failed to fulfill their "responsibilit[y to] enforce the federal laws under PREA law" and permitted the sexual abuse and harassment of Plaintiff alleged earlier. (Dkt. 50 at ¶ 54). To the extent that Plaintiff's claim is based on a failure to investigate his allegations of sexual assault under Prison Rape Elimination Act (PREA), it must be dismissed because "[n]othing in the statute suggests that PREA intended to establish a private claim for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a claim by an inmate." *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) (quoting *Amaker v. Fischer*, No. 10–CV–0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (citing cases)). To the extent that Plaintiff is reiterating the claims set forth in ¶¶ 23 through 42, those claims were dealt with in Section II.B, and some of them will proceed to service. Plaintiff's general and conclusory claim in this paragraph does not set forth allegations sufficient to allege retaliation, nor does it set forth either a cognizable claim of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment, or a due process claim. Further, Plaintiff has failed to establish the personal involvement of either Defendant Hill or Crowley in the alleged constitutional violations. *See Colon*, 58 F.3d at 874 ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim.").

Finally, Plaintiff alleges that Defendants Geary, LaPenna, Davis, and Hayden "and other medical nurses in Wende C.F. SHU" regularly denied Plaintiff his medications or to "address and/or report Abreu medical complaints." (Dkt. 50 at ¶ 55). Despite the express admonition of this Court's prior Order to set forth allegations demonstrating the personal involvement of each Defendant in the alleged constitutional violation, Plaintiff has again failed to do so. Especially in light of Plaintiff's allegations that the doctors involved in his care refused to prescribe medication, the failure of nurses to provide prescription medication does not establish deliberate indifference. *See, e.g., Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012) (nurse properly withheld medication to conform dosage to doctor's prescription); *see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking."). Plaintiff's wholly conclusory allegations again fail to state a cause of action on which relief may be granted.

For the reasons set forth above, the claims in ¶¶ 45 through 55 must be dismissed with prejudice for failure to state a claim on which relief may be granted.

### E.    Claims Regarding Diet (Dkt. 50 at ¶¶ 56-58)

Plaintiff alleges that he was placed on a restricted diet that was allegedly inadequate and lacked nutrients. He alleges that "the defendants who sentenced plaintiff Abreu to restricted diet in the disciplinary hearings and the defendants who affirmed such sentences [had] further knowledge that the diet was inadequate lack of nutrition." (Dkt. 50 at ¶ 56). Plaintiff provides no information regarding the nature of the restrictions or his diet. Plaintiff then lists nearly 100 hundred named Defendants who he claims were responsible

for this deprivation. Plaintiff's claims are devoid of any allegations that would support them, and, again, merely state a conclusion and list numerous Defendants as responsible in some unspecified manner. Plaintiff's wholly conclusory allegations again fail to state a cause of action on which relief may be granted ,and the claims set forth in ¶¶ 56 through 58 must be dismissed with prejudice for failure to state a claim on which relief may be granted.

## III.    Plaintiff's Sullivan C.F. Claims

In his Amended Complaint, Plaintiff has added claims which occurred after his initial Complaint was filed, claims arising in prisons other than Wende C.F.. Specifically, in ¶¶ 59 through 70, along with portions of ¶ 54, Plaintiff has made allegations regarding his treatment while confined in Sullivan C.F. (Dkt. 50 at 25-31). Sullivan C.F. is located in Fallsburg, New York. The events underlying the claims asserted in ¶¶ 59 through 70, and part of ¶ 54, of the Amended Complaint are alleged to have occurred in Fallsburg, New York, which is located in Sullivan County and thus within the geographical confines of the Southern District of New York.

Rule 20 of the Federal Rules of Civil Procedure permits joinder of defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In the event of misjoinder of parties, Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against

- 23 -

a party and proceed with that claim separately. *See* Fed. R. Civ. P. 21. In deciding whether to sever a claim, the Court should consider the following:

(1)   whether the claims arise out of the same transaction or occurrence;
(2)   whether the claims present some common questions of law or fact;
(3)   whether settlement of the claims or judicial economy would be facilitated;
(4)   whether prejudice would be avoided if severance were granted; and
(5)   whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

The claims regarding Sullivan C.F. arose out of alleged misconduct that occurred at that correctional facility. These events are separate and distinct from the allegations regarding those that occurred at Wende C.F. The Wende C.F. claims present a different set of facts and will require different witnesses and documentary proof than the Sullivan C.F. claims. The remainder of the factors also weigh in favor of severance. Therefore, the Court will sever Plaintiff's claims regarding Sullivan C.F., which are set forth in ¶¶ 59 through 70, along with portions of ¶ 54 of the Amended Complaint, from those claims contained in Plaintiff's complaint that arise from Plaintiff's confinement at Wende C.F.

Sullivan C.F. is located in the Southern District of New York. Consequently, the Court must now decide whether it should transfer the severed claims to the United States District Court for the Southern District of New York. A district court may transfer an action *sua sponte*. *See Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (observing that "[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte*" (citation omitted)). Under 28 U.S.C. § 1404(a), a court may transfer "[f]or the convenience of parties and

witnesses, in the interest of justice . . . to any other district or division where [the action] might have been brought . . . ." 28 U.S.C. § 1404(a). The relevant federal venue statute provides as follows:

A civil action may be brought in . . . (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

*Id.* § 1391(b).

Plaintiff does not allege that the Defendants employed at Sullivan C.F. reside within the Western District of New York. Instead, he merely identifies them as employees at Sullivan C.F., and, thus, these Defendants likely reside in the Southern District of New York. The claims against these Defendants arose entirely in the Southern District. The witnesses and the required documents will be found in the Southern District. Accordingly, the Court will sever Plaintiff's claims arising in Sullivan C.F., set forth in ¶¶ 59 through 70 of the Amended Complaint, along with those portions of ¶ 54 dealing with Sullivan C.F., from the remainder of this action and will transfer the claims to the Southern District of New York.[2]

---

[2]     The Court notes that, "[w]here the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. N.Y. Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986) (citations omitted) (explaining that "[a] claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer").

## IV.    Plaintiff's Great Meadow C.F. Claims

Similarly, in his Amended Complaint, in ¶¶ 71 through 151, Plaintiff has made allegations regarding his treatment while confined in Great Meadow C.F. (Dkt. 50 at 31-70). Great Meadow C.F. is located in Comstock, New York. The events underlying the claims asserted in ¶¶ 71 through 151 of the Amended Complaint are alleged to have occurred in Comstock, New York, which is located in Washington County and thus within the geographical confines of the Northern District of New York.

The claims regarding Great Meadow C.F. arose out of alleged misconduct that occurred at that correctional facility. These events are separate and distinct from the allegations regarding those which occurred at Wende C.F. The Wende C.F. claims present a different set of facts and will require different witnesses and documentary proof than the Great Meadow C.F. claims. The remainder of the factors also weigh in favor of severance. Therefore, the Court will sever Plaintiff's claims regarding Great Meadow C.F. from those claims contained in Plaintiff's complaint that arise from Plaintiff's confinement at Wende C.F.

Plaintiff does not allege that the Defendants employed at Great Meadow C.F. reside within the Western District of New York. Instead, he merely identifies them as employees at Great Meadow C.F., and, thus, Defendants likely reside in the Northern District of New York. The claims against these Defendants arose entirely in the Northern District. The witnesses and the required documents will be found in the Northern District. Accordingly, the Court will sever Plaintiff's claims arising in Great Meadow C.F., set forth in ¶¶ 71

- 26 -

through 151 of the Amended Complaint, from the remainder of this action and will transfer the claims to the Northern District of New York.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims of retaliation, conspiracy, and deliberate indifference to a serious medical need may proceed to service against Defendants Levitt, Schumacher, Killinger, Lempke and Koenigsmann, and Plaintiff's claims of retaliation, excessive use of force, and denial of medical care may proceed to service against Defendants Hamilton, Szablick, and Rosplock. Plaintiff's claims regarding Sullivan C.F., as set forth in ¶¶ 59 through 70 and part of ¶ 54, are severed and transferred to the Southern District of New York. Plaintiff's claims regarding Great Meadow C.F., as set forth in ¶¶ 71 through 151, are severed and transferred to the Northern District of New York. Plaintiff's remaining claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), as detailed above, for failure to state a claim on which relief may be granted.

## ORDER

IT IS HEREBY ORDERED, that the Clerk of Court is directed to cause the United States Marshal to serve copies of the Summons, Amended Complaint (Dkt. 50), and this Order upon Defendants Levitt, Schumacher, Killinger, Lempke, Koenigsmann, Hamilton, Szablick, and Rosplock without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; [3]

---

[3]      Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P.

FURTHER, the Clerk of Court is directed to terminate all other Defendants as parties to this action;

FURTHER, that the claims set forth in ¶¶ 59 through 70, and that part of ¶ 54 dealing with Sullivan C.F., are severed and transferred to the Southern District of New York;

FURTHER, that the claims set forth in ¶¶ 71 through 151 are severed and transferred to the Northern District of New York;

FURTHER, Plaintiff's claims set forth in ¶¶ 14 and 19 except those against Defendant Levitt, ¶¶ 17, 20-25, 39-58, except for those parts of ¶ 54 dealing with Sullivan C.F., are dismissed with prejudice for failure to state a claim on which relief may be granted;

FURTHER, that the Clerk of Court is directed to forward a copy of this Order and the Amended Complaint (Dkt. 50) by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>.; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to answer the Complaint.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 22, 2018
       Rochester, New York

---

12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y. CPLR 312-a.